**LYNCH CARPENTER LLP**
Todd D. Carpenter (CA 234464)
todd@lcllp.com
James B. Drimmer (CA 196890)
jim@lcllp.com
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
Telephone: (619) 762-1900
Facsimile: (858) 313-1850

**PAK HEINZ PLLC**
Albert Y. Pak (*pro hac vice* forthcoming)
albert.pak@pakheinz.com
Noah S. Heinz (*pro hac vice* forthcoming)
noah.heinz@pakheinz.com
20 F St. N.W. 7th Fl.
Washington, DC 20001
Telephone: (202) 505-6350

*Attorneys for Plaintiff and Proposed Class Counsel*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA CHERNOV, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BLACKSTONE, INC., a Delaware corporation, A PLACE FOR ROVER, INC., a Delaware corporation, ROVER GROUP, INC., a Delaware corporation, dba ROVER/ROVER.COM, and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: **'25CV0923 BEN MSB**<br><br>**CLASS ACTION COMPLAINT**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff Ana Chernov ("Plaintiff"), brings this action, on behalf of herself and all others similarly situated, against Blackstone, Inc., A Place for Rover, Inc., and Rover Group, Inc. dba "Rover" or "Rover.com" (collectively, "Defendants" or "Rover") and states:

## I.   NATURE OF ACTION

1. Defendant Rover operates an online marketplace for people to sell and purchase pet care services, including but not limited to, dog boarding, dog walking, and other services for both dogs and cats.

2. Plaintiff, individually and on behalf of all others similarly situated, brings this class action complaint against Defendants for violations of California Consumer Laws. Specifically, Defendants violate the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, arising from Defendants' failure to disclose all fees, costs, and/or expenses upfront, as required under Cal. Civil Code § 1770(a)(29).

3. The CLRA requires businesses to include all mandatory fees or charges upfront in an advertisement or listing for goods and services. Cal. Civ. Code § 1770(a)(29). The purpose of this law is intended to prevent deceptive advertising and promote truthful price advertising to allow consumers to make accurate price comparisons and to help businesses compete fairly on price.[1]

4. At all relevant times, Defendants have continually advertised the price of each service without including all of Rover's mandatory fees. Instead, Defendants deceptively list the service price as the "total price," when in reality, that "total price" does not include Rover's mandatory booking fee, which is ***11%*** of the service(s) selected. Consumers are not given their actual total price until they go to checkout and pay for their services, which is when they learn their total price for the first time.

---

[1] https://oag.ca.gov/hiddenfees

5. As an illustrative example, if a dog boarding service is advertised on the Rover website or application as "$55 total per night," the service will not actually cost $55 total per night. Rather, once a consumer proceeds to check out to complete the transaction, the consumer will see that included in their total price is a "service fee" for 11% of the service that is booked. In this example, the service fee would be $6.05, making the actual total for the dog boarding service $61.05, not the originally advertised $55.

6. Plaintiff seeks injunctive and declaratory relief, damages, restitution, attorney fees, and costs as provided under Cal. Civ. Code § 1782(c) and Cal. Bus. & Prof. Code §17200, *et seq*.

## II.     THE PARTIES

7. Plaintiff is, and at all times relevant was, a resident of the City of Escondido in the State of California.

8. Defendant Blackstone, Inc., is a corporation organized and existing under the laws of the State of Delaware and is authorized to do business in the State of California, with its principal place of business in New York, New York.

9. Defendant A Place for Rover, Inc., is a corporation organized and existing under the laws of the State of Delaware and is authorized to do business in the State of California, with its principal place of business in Olympia, Washington.

10. Defendant Rover Group, Inc., is a corporation organized and existing under the laws of the State of Delaware and is authorized to do business in the State of California, with its principal place of business in Olympia, Washington.

11. Plaintiff does not know the true names or capacities of the persons or entities sued herein as Does 1-50, inclusive, and therefore sue such defendants by such fictitious names. Plaintiff is informed and believes, and upon such information and belief alleges, that each of the Doe defendants is in some manner legally responsible for the damages suffered by Plaintiff and the proposed Class members as alleged herein. Plaintiff will amend this Complaint to set forth the true names

and capacities of these defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

### III. JURISDICTION AND VENUE

12. This Court has original jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interests and costs, exceeds the sum or value of $5,000,000, and Plaintiff, and at least some members of the proposed Class (defined below) have different state citizenship from Defendants.

13. The Southern District of California has personal jurisdiction over Defendants because Defendants are corporations which conduct business in the State of California. Defendants conduct sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avail themselves of the California market through the operation of Rover.com within the State of California.

14. Venue is proper under 28 U.S.C. § 1391(b)(2) because Defendants transact substantial business in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

### IV. GENERAL ALLEGATIONS

*<u>The hidden fees imposed by Defendants are deceptive and unlawful.</u>*

15. According to data from Consumer Reports in 2018, "at least 85% of Americans have experienced a hidden or unexpected fee for a service, and more than two-thirds of those surveyed in 2023 said they were paying more now in surprise charges than they did five years earlier."[2]

16. On July 1, 2024, a new provision of the CLRA, codified at Cal. Civ. Code § 1770(a)(29), went into effect. This provision mandates that businesses advertising, displaying, or offering prices for goods or services must include all

---

[2] https://www.oag.ca.gov/news/press-releases/landmark-price-transparency-law-set-go-effect-july-1-attorney-general-bonta

mandatory fees and charges upfront, with limited exceptions for government-imposed taxes and shipping costs.

17. The legislative intent behind this provision was to address the widespread practice of "drip pricing," where businesses advertise an initial price but later add mandatory fees during the transaction process. This practice was found to mislead consumers and prevent them from making informed purchasing decisions.

18. This new law, often referred to as the "Honest Pricing Law," aims to promote transparency in pricing and protect consumers from deceptive and unfair business practices. It ensures that consumers are presented with the true cost of goods or services at the outset, enabling them to compare prices and make informed choices.

19. Per Rover's website, fees and rates are different in California than they are in other states.[3] In California, Rover charges two different types of fees: marketplace fees and booking fees. Rover's marketplace fees are included in the list price. The marketplace fee is 25%—rounded to the nearest dollar—of the rate pet care providers set for each service, which is equivalent to 20% of the list price. For example, if a pet care provider sets their rate at $20 per service, the marketplace fee would be $5, and thus the listing price would be $25. Put simply, the marketplace fees are *already included* in the listing price. Defendants' booking fee, however, is not included in the listing price. Rather, the 11% booking fee (not to exceed $50) is added to the listing price during checkout when consumers pay for the booking.

20. Upon visiting Rover's website at http://rover.com (or Rover's mobile application), consumers are prompted to select a service. Consumers can enter their zip code to narrow their search to nearby local listings. Once this information is entered, consumers are able to view those listings, and each listing includes the

---

[3] https://support.rover.com/hc/en-us/articles/12439190554132-Fees-and-rates-in-California

4
CLASS ACTION COMPLAINT

"total" price for each service. The pet care providers set their own rates for their services. Defendants then collect a portion of the listing price (i.e., marketplace fees that are already included in the listing price) and collect additional fees (i.e., booking fees) at checkout.

21. Defendants have advertised, and continue to advertise, the services offered without disclosing all mandatory fees and charges upfront, including but not limited to "drip" fees (i.e., Rover's booking fees) that are added later in the transaction process.

22. Defendants' failure to disclose all mandatory fees and charges upfront, as required by Cal. Civ. Code § 1770(a)(29), constitutes a violation of the CLRA. Despite the law's clear requirements, Rover continues to engage in deceptive practices by advertising services that do not include all mandatory fees (i.e., Rover's booking fees), thereby misleading consumers and violating consumers' rights under the CLRA.

23. Plaintiff and the proposed Class has been harmed by Defendants' non-compliance with the CLRA, as they were subjected to undisclosed fees that were added after the initial service price was advertised and presented on Defendants' website and application. This practice deprived Plaintiff and the proposed Class of the ability to make informed purchasing decisions and resulted in financial harm, as they were misled as to the actual price for the services advertised initially.

### *Plaintiff was deceived in purchasing pet care service from Defendants.*

24. Plaintiff purchased boarding services for her dog from Defendants' Rover application, following the enactment of the CLRA drip pricing statute.

25. She purchased one boarding service, priced at a standard rate of $75 per night. Plaintiff's "total" price *as advertised* was $75. But because of Rover's 11% booking fee, Plaintiff was charged an additional $8.25 at checkout, and thus Plaintiff's actual total was $83.25.

[Screenshot of Rover booking confirmation page showing "Congrats, your stay is booked!" for Winston with sitter Elena D. in Carmel Valley, San Diego, CA. Boarding in their home, Jan 25, 2025 – Jan 26, 2025, 10:00 AM to 10:00 AM. Charges: Winston Standard Rate 1 night @ $75.00/night = $75.00. Rover Service Fee $8.25. Sales Tax $0.00. Total: $83.25. "You have paid for this stay." Pet's safety info shows Veterinary Info, Emergency contact info (Mark Beebe), and Care instructions all complete.]

26. When Plaintiff was browsing pet care services for her dog, the price that was advertised on Rover was "$75 total per night." Plaintiff was subjected to undisclosed fees that were not included in this initially advertised price. She was misled by a falsely advertised price only to find out later when she went to finalize the transaction that she had to pay an extra $8.25 in fees. At no point prior to checkout was the $8.25 booking fee included in the price that was advertised to Plaintiff, which was the price that Plaintiff relied on in deciding to purchase services from Rover instead of from a competitor.

27. Plaintiff was deprived of the ability to make an informed purchasing decision when she was deceived and misled by Defendants' unlawful pricing model that did not include all mandatory fees that Plaintiff would have to pay.

### *Defendants can disclose all mandatory fees in the service listing price.*

28. Both of Defendants' mandatory fees—the marketplace fees and booking fees—are percentages of the original service price, except only the marketplace fees are included in the listing price that Defendants represent is the "total" price on the Rover website and application.

29. Both types of mandatory fees are percentages, which can be easily calculated and added to each listing price automatically. Defendants have no issue computing the marketplace fee percentage to each service listing, but rather than doing the same for Rover's booking fee, Defendants exclude it from the "total" price and wait until checkout to give consumers their actual total price.

30. What is more, it appears that Defendants have recently changed the display of their website and application to include a statement *near* the service price that an 11% booking fee will apply to the service selected at checkout. This change in Defendants' price presentation is an admission that their prior presentation, where there was no mention of the booking fee until checkout, was unlawful. Regardless, this disclaimer continues to be in violation of the CLRA, and is deceptive and misleading because it fails to include all mandatory charges in the price as required by the statute and is not sufficiently conspicuous in font, size, color, and proximity to the advertised pricing in order to sufficiently put all consumers on notice of the mandatory charges that follow.

31. The price of a good or service listed or advertised to a consumer must be the *total price* that the consumer will be required to pay. In the event a business is uncertain how much the total price of a service will be, then the business should wait to display a price until they know how much they will charge.[4]

32. If Defendants maintain that they are unable to include the booking fee in the listing price because the price will vary depending on the amount of services selected, then Defendants must not list any price at all until they are able to list the

---

[4] https://oag.ca.gov/hiddenfees

full price that the consumer will pay. Because the booking fee is a percentage of the service price, there is no reason that Defendants cannot include it in the service price as they do for Rover's marketplace fees.

### ***Plaintiff has standing for injunctive relief and lacks an adequate remedy at law.***

33. Plaintiff and the proposed Class are also susceptible to the same harm reoccurring, and therefore require an injunction (i.e., Plaintiff lacks an adequate remedy at law), because they cannot be certain that Defendants will have corrected this deceptive pricing scheme, and they desire to book Defendants' Rover services in the future because they like and need the pet care services offered. Further, due to the enormous, fluctuating variety of providers and services offered by Rover on its website and mobile application, Plaintiff will be unable to parse what prices are inflated and untrue, and what prices are not. Plaintiff simply does not have the resources to ensure that Defendants are complying with California and federal law with respect to their pricing, labeling, and/or advertising of their Rover pet care services.

34. Further, because of the wide selection of pet care services available at Defendants' website and mobile application, the sheer volume of services involved in Defendants' deceit (i.e., on information belief, virtually all of them), and the likelihood that Defendants may yet develop and market additional pet care services for sale, Plaintiff may again, by mistake, purchase a falsely priced pet care service from Defendants under the reasonable, but false, impression that Defendants had corrected the scheme and that their reference price advertisement represented the actual total price at which the services were offered for sale by Defendants. However, without a substantial, time-consuming, and costly investigation, Plaintiffs and the proposed Class will have no way of knowing whether Defendants have deceived them again.

35. Absent an equitable injunction enjoining Defendants from continuing in the unlawful course of conduct alleged herein, Plaintiff, proposed Class

members, and the public will be irreparably harmed and denied an effective and complete remedy because they face a real and tangible threat of future harm emanating from Defendants' ongoing and deceptive conduct that cannot be remedied with monetary damages. Accordingly, Plaintiff, proposed Class members, and the public lack an adequate remedy at law and an injunction is the only form of relief which will guarantee Plaintiff, the proposed Class, and California consumers at large the appropriate assurances.

36. Plaintiff lacks an adequate remedy at law with respect to her claims for equitable restitution, as she has not yet retained an expert to develop a damages model that would establish whether an award of actual damages will sufficiently compensate for her monetary losses. Legal damages are typically limited to compensating for out-of-pocket losses (reliance damages) or lost benefit of the bargain (expectancy damages). In contrast, equitable restitution seeks to restore funds improperly obtained by Defendants. Here, Plaintiff and the Classes may seek restitution of the full transaction amount, not merely the drip pricing fee paid, as those monies were unlawfully obtained. At this stage, Plaintiff credibly alleges that legal remedies are inadequate because it remains uncertain whether a damages model will be viable or coextensive with the restitution sought.

37. Plaintiff further lacks an adequate remedy at law because California's Unfair Competition Law ("UCL") (an equitable cause of action) carries a statute of limitations of four years, while the CLRA (which can provide legal damages and equitable restitution) carries a shorter, three-year statute of limitations. Cal. Bus. & Prof. Code § 17208; Cal. Civ. Code § 1783. Thus, dismissal of Plaintiff's (equitable) UCL claims would wipe out an entire year's worth of monetary recovery for the Classes.

38. Finally, Plaintiff lacks an adequate remedy at law because the UCL "sweeps more broadly than the CLRA." *Allen v. Hylands, Inc.*, 773 F. App'x 870, 874 (9th Cir. 2019). While Plaintiff's claim under the "fraudulent" prong of the

UCL is subject to the same "reasonable consumer" test as the CLRA, her claim under the "unfair" prong is more far-reaching, and, as alleged below, liability may be found if Defendants' practices "offended an established public policy of transparency in pricing" or are "immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers." These tenets of liability seek to remediate broader harm for which there is no corollary under the CLRA, making legal damages inadequate. Accordingly, Plaintiff may set forth alternate claims for legal damages and equitable restitution.

## V. CLASS ALLEGATIONS

39. Plaintiff brings this action on behalf of herself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following Class(es) against Defendants:

> All persons who purchased any pet services from Rover.com or the Rover mobile application to be performed within the State of California during the Class Period.

> All California residents who purchased any pet services from Rover.com or the Rover mobile application to be performed outside of California during the Class Period.

40. Excluded from the Classes are Defendants, as well as their officers, employees, agents or affiliates, parent companies and/or subsidiaries, and each of their respective officers, employees, agents or affiliates, and any judge who presides over this action. Plaintiff reserves the right to expand, limit, modify, or amend these Class definitions, including the addition of one or more classes, in connection with her motion for Class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

41. ***Numerosity:*** The Class members are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that the proposed Classes contain thousands of individuals who have been harmed by Defendants'

conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

42. ***Existence and Predominance of Common Questions of Law and Fact:*** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include whether Defendants' service pricing, advertising, representations and omissions were and are misleading and if Plaintiff and Class members are entitled to damages.

43. ***Typicality:*** Plaintiff's claims are typical of the claims of the Class members because all were subjected to the same unfair, misleading, and deceptive pricing, advertising, representations, and omissions.

44. ***Adequacy:*** Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interests to those of the Classes.

45. ***Superiority:*** The nature of this action and the nature of laws available to Plaintiff and the Classes make the use of the class action format a particularly efficient and appropriate procedure to afford relief to her and the Classes for the wrongs alleged in this Complaint. The injuries suffered by individual members of the Classes are relatively modest compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, Class members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and Defendants will be permitted to profit from its wrongful conduct.

## VI.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
Cal. Civ. Code §§ 1750, *et seq.*
(Cal. Civ. Code § 1770(a)(29))

46.     Plaintiff incorporates by reference the allegations contained in every preceding paragraph as though fully set forth herein.

47.     This cause of action is brought under the CLRA, Cal. Civ. Code § 1750, *et seq*. The CLRA prohibits deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

48.     Plaintiff and each member of the Classes are "consumers" under Cal. Civ. Code § 1761(d). Defendants' sale of services were "transactions" within the meaning of Cal. Civ. Code § 1761(e). Plaintiff and the Class members purchased the services listed by Defendants, through Rover's website or the Rover application, for personal and/or household use.

49.     Defendants' policies, acts, and practices were designed to, and did, result in the purchase, consumption and/or use of the services primarily for personal, family, or household purposes, and violated and continue to violate sections of the CLRA, including:

    a.     Cal. Civ. Code § 1770(a)(9): Advertising goods or services with intent not to sell them as advertised and;

    b.     Cal. Civ. Code § 1770(a)(29)(A): Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than either of the following:

        i.     Taxes or fees imposed by a government on the transaction

        ii.     Postage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer.

50. Plaintiff and individual members of the Classes were subjected to undisclosed fees that were added after the initial service price was advertised and displayed on Defendants' website and application.

51. Plaintiff and the proposed Classes were harmed directly and proximately from Rover's violation of Cal. Civ. Code § 1770(a)(9) and (29) because this practice deprived Plaintiff and the proposed Class members of the ability to make informed purchasing decisions, resulting in financial harm.

52. On April 16, 2025, Plaintiff's counsel sent Defendants a CLRA notice letter, which complies in all respect with Section 1782(a). The letter was sent via certified mail, return receipt requested, and advised Defendants that they were in violation of the CLRA and demanded Defendants cease and desist from such violations and make full restitution by refunding the monies received therefrom within 30 days. The CLRA letter stated that it was sent on behalf of all other similarly situated purchasers.

### SECOND CAUSE OF ACTION
**Violation of California's Unfair Competition Law ("UCL")**
**CAL. BUS. & PROF. CODE §§ 17200, *et seq.***

53. Plaintiff incorporates by reference the allegations contained in every preceding paragraph as though fully set forth herein.

54. The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

55. The UCL imposes strict liability. Plaintiff need not prove that Defendants intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

*"Unfair" Prong*

56. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing

13
CLASS ACTION COMPLAINT

the reasons, justifications and motives of the practiced against the gravity of the harm to the alleged victims.

57. Defendants' actions constitute "unfair" business practices because, as alleged above, Defendants engaged and continue to engage in misleading and deceptive pricing practices by subjecting consumers to undisclosed fees that are not included in the initially advertised service price on Rover's website and application.

58. The harm to Plaintiff and proposed Class members outweighs the utility of Defendants' practices because Defendants' practice of imposing undisclosed fees provides no utility. There were reasonably available alternatives to further Defendants' legitimate business interests other than the misleading and deceptive conduct described herein.

### *"Fraudulent" Prong*

59. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

60. Defendants' acts and practices alleged above constitute fraudulent business acts or practices as they have deceived Plaintiff and members of the proposed Classes. Plaintiff and members of the proposed Classes were subjected to undisclosed fees that were not included in the listing price that was advertised by Defendants as the "total" price.

61. Defendants' conduct was and continues to be unfair and/or fraudulent, because it marketed, advertised, and presented service prices that are misleading to consumers as to the true costs of such services.

### *"Unlawful" Prong*

62. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation. The UCL prohibits activities and business practices that directly violate provisions of particular statutes.

63. Defendants' practices identified herein violate the CLRA and therefore violate the "unlawful" prong of the UCL. As detailed in Plaintiff's First Cause of

Action above, the CLRA, Cal. Civ. Code § 1770(a)(29)(A), prohibits a business from "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges. . . ."

64. As detailed herein, the acts and practices alleged were intended to or did result in violations of the CLRA. Defendants' practices, as set forth above, misled Plaintiff, the proposed Classes, and the public in the past and will continue to mislead in the future. Consequently, Defendants' practices constitute an unlawful, fraudulent, and unfair business practice within the meaning of the UCL.

65. As a result of Defendants' misconduct, Plaintiff and the proposed Classes suffered damages in that they were deprived of the ability to make informed purchasing decisions, resulting in financial harm.

66. Plaintiff and the proposed Classes are entitled to restitution, declaratory and injunctive relief, and any attorneys' fees and costs available to them.

## VII.   PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of herself and on behalf of the other members of the Classes, requests that this Court award relief against Defendants as follows:

A. an order certifying the Classes and designating Plaintiff as the Class Representative and her counsel as Class Counsel;

B. awarding actual, punitive and statutory damages as permitted under the UCL and CLRA assuming corrective actions have not been made in a timely fashion;

C. awarding declaratory and injunctive relief as permitted by law and equity, including injunctive relief requiring Defendants to disclose all mandatory fees and charges upfront in compliance with Cal. Civ. Code § 1770(a)(29) and declaratory relief finding that Defendants' practices violate the CLRA and UCL;

D. awarding attorneys' fees and costs; and

E.  for such other and further relief as the Court may deem necessary or appropriate.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

Dated: April 17, 2025

**LYNCH CARPENTER LLP**

By: */s/ Todd D. Carpenter*
Todd D. Carpenter (CA 234464)
todd@lcllp.com
James B. Drimmer (CA 196890)
jim@lcllp.com
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
Telephone:  (619) 762-1910
Facsimile:  (858) 313-1850

**PAK HEINZ PLLC**
Albert Y. Pak (*pro hac vice* forthcoming)
albert.pak@pakheinz.com
Noah S. Heinz (*pro hac vice* forthcoming)
noah.heinz@pakheinz.com
20 F St. N.W. 7th Fl.
Washington, DC 20001
Telephone:  (202) 505-6350

*Attorneys for Plaintiff and Proposed Class Counsel*